733 F.2d 556
 116 L.R.R.M. (BNA) 2219, 101 Lab.Cas. P 11,022
 Laara ZEVIAR, Appellant,
v.
LOCAL NO. 2747, AIRLINE, AEROSPACE AND ALLIED EMPLOYEES,
IBT, E. Sylvia Dombrosky, Union Member of Arbitration Panel,
Northwest Airlines, Inc., Michael I. Fahey, Employer Panel
Member and Charles C. Killingsworth, Arbitrator, Chairman
and Neutral Member of Panel, Appellees.
 No. 83-2170.
 United States Court of Appeals,
Eighth Circuit.
 May 3, 1984.
 
 Laara Zeviar, pro se.
 Dorsey & Whitney, David A. Ranheim, Pamela R. Saunders, Minneapolis, Minn., for appellees Northwest Airlines, Inc. and Michael I. Fahey.
 Before BRIGHT, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Laara Zeviar appeals pro se from the district court's[1] order granting defendants' motions for summary judgment and dismissing her petition for review of an arbitration award. We affirm.
 
 
 2
 Zeviar is a flight attendant for Northwest Airlines (NWA) and is represented by Local 2747 of the International Brotherhood of Teamsters. On March 28, 1982, Zeviar reported for work after a sick leave absence and learned that she was being removed from her scheduled morning flight, Flight 21, because she had not provided a doctor's statement regarding her last absence. Under section 7 of the collective bargaining agreement between NWA and Local 2747, each time an employee exceeds three "sick incidents" within twelve months, she must produce evidence from a physician that she was unable to perform her regular duties because of illness before she can return to active flight status. The agreement also provides, however, that NWA must send a "Sick Leave Letter" to the employee after three sick incidents notifying her of this requirement. NWA now concedes that it failed to send Zeviar such a letter prior to March 28, 1982, and that it therefore improperly removed her from Flight 21. On March 29, NWA suspended Zeviar pending investigation for insubordination because she refused to take an afternoon flight on March 28 after her removal from Flight 21. NWA discharged Zeviar for insubordination on April 1, after which she unsuccessfully initiated grievance procedures pursuant to section 22 of the collective bargaining agreement.
 
 
 3
 Zeviar then appealed for reinstatement with back pay to the System Board of Adjustment (Board).[2] The Board's neutral chairman determined that the discharge of Zeviar was an excessive penalty which could not be sustained because Zeviar's supervisor failed to give her a direct order to take the afternoon flight. Despite his findings that Zeviar was not insubordinate and thus discharge was unwarranted, the chairman further concluded that Zeviar should bear responsibility for half of the wages she lost after her discharge because she too was at fault. Regarding Zeviar's refusal to take the afternoon flight, the chairman found that "she thought she should get credit for Flight 21, from which she felt she had been improperly removed" and that "she wanted pay from the Company for approximately 18 hours of flying time for which she would do no flying." The chairman emphasized, however, that allocation to Zeviar of partial liability for her lost wages was not a disciplinary penalty, and that her employment record should reflect this point.
 
 
 4
 After Local 2747 denied Zeviar's request to file a motion for reconsideration or appeal, the Board denied her pro se motion. Zeviar then filed a petition in Minnesota state court for appeal and review of the Board's decision to reduce her back pay, naming as defendants NWA, Local 2747, and the three members of the Board--Dombrosky (union member), Fahey (employer member), and Killingsworth (neutral member and chairman). Defendants removed the action to federal district court. After a hearing, the district court denied Zeviar's motion for remand to state court and granted defendants' motion for summary judgment.[3]
 
 
 5
 Zeviar argues that summary judgment was improper because the Board's award exceeded its jurisdiction[4] and was contrary to section 21.C.2 of the collective bargaining agreement, which provides:
 
 
 6
 If, as a result of any hearing or appeal therefrom as provided herein, an employee is exonerated, s/he shall, if s/he has been held out of service, be reinstated without loss of seniority and shall be paid for all such time lost the full amount s/he would ordinarily have earned had s/he been continued in service during such period.
 
 
 7
 Zeviar maintains that she was exonerated and thus the Board was bound to the terms of section 21.C.2, including full back pay.
 
 
 8
 The district court rejected this argument, relying primarily on two cases: Lynchburg Foundry Co. v. United Steelworkers of America, 404 F.2d 259 (4th Cir.1968) and Epple v. Union Pacific Railroad, 558 F.Supp. 63 (D.Colo.1983). In both cases, arbitration awards reinstated discharged employees but denied back pay despite the presence of contract clauses similar to section 21.C.2. When the employees appealed the denial of back pay, both courts declined to disturb the awards, finding thatrigid interpretation of the arbitrator's scope of authority is not warranted and would be acceptable only if a contract expressly forbade the arbitrator to exercise any discretion in fashioning this award. * * * The question of contract interpretation here is whether reinstatement with full pay represents the sole remedy for an employee who has suffered an injustice, or whether it merely marks the outer limits within which an arbitrator may fashion a remedy appropriate to the circumstances. In the absence of language evidencing a clear intent to deny the arbitrator any latitude of judgment, the arbitrator is the one to answer this question.
 
 
 9
 Lynchburg Foundry Co., supra, 404 F.2d at 261; Epple, supra, 558 F.Supp. at 65. The district court concluded that these decisions, and the underlying rationale of allowing broad discretion to arbitrators, compelled summary judgment in favor of defendants and dismissal of Zeviar's cause of action.
 
 
 10
 Our review of the award is limited to determining whether the collective bargaining agreement gave the Board authority to make its award as it did. See Grahams Service Inc. v. Teamsters Local 975, 700 F.2d 420, 422 (8th Cir.1982). If the award drew its essence from the collective bargaining agreement, this court may not review the merits or refuse to enforce the award. W.R. Grace & Co. v. Local 759, International Union of Rubber Workers, --- U.S. ----, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983). In determining whether the Board exceeded its authority, however, this court must broadly construe the agreement and resolve all doubts in favor of the Board's authority. Lackawanna Leather Co. v. United Food & Commercial Workers, 706 F.2d 228, 230-31 (8th Cir.1983) (en banc).
 
 
 11
 In our view, the award did not exceed the scope of the Board's authority. Although the chairman found no insubordination, he did not consider Zeviar to be fully exonerated in the sense of bearing no responsibility for her discharge and lost wages. In the absence of full exoneration, section 21.C.2 does not require an award of full back pay. Thus the Board had authority to exercise its discretion in formulating a remedy, and the award drew its essence from the collective bargaining agreement.
 
 
 12
 Accordingly, we affirm the dismissal of Zeviar's cause of action.
 
 
 
 [1]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [2]
 Section 204 of the Railway Labor Act, 45 U.S.C. Secs. 151-188, requires air carriers and the representatives of their employees to establish boards of adjustment to handle labor disputes. Section 23 of the collective bargaining agreement between NWA and Local 2747 establishes a System Board of Adjustment and renders its decisions final and binding. The Board consists of an employer member, a union member, and a neutral member who acts as chairperson
 
 
 [3]
 Although Zeviar argues for remand based on lack of federal jurisdiction, the district court correctly found that removal to federal court was proper. Awards of airline system boards of adjustment arise out of the Railway Labor Act, 45 U.S.C. Secs. 151-188, and are governed by federal law in the federal courts. International Association of Machinists v. Central Airlines, 372 U.S. 682, 691-92, 83 S.Ct. 956, 961-62, 10 L.Ed.2d 67 (1963)
 Zeviar also contends that the district court should have entered a default judgment against defendant Killingsworth because he "did not plead or appear at the motions hearing." She directs this court's attention to certificates of service noting that copies of documents she submitted to state and federal courts were mailed to Killingsworth. The district court, however, found no indication in the record before it that defendant Killingsworth was properly served. Even if he was served, Fed.R.Civ.P. 55(b) requires that "the party entitled to a judgment by default shall apply to the court therefor." As defendants NWA and Fahey point out, Zeviar never made such an application to the district court. The court therefore did not err in failing to enter a default judgment against Killingsworth.
 
 
 [4]
 The grounds for setting aside an order of the Board under Section 153 First (q) of the Railway Labor Act, and applied to airline board decisions under Hunt v. Northwest Airlines, 600 F.2d 176, 178 (8th Cir.), cert. denied, 444 U.S. 946, 100 S.Ct. 308, 62 L.Ed.2d 315 (1979), are: (1) failure of the Board to comply with the requirements of the Act, (2) failure of the order to conform or confine itself to matters within the scope of the Board's jurisdiction, or (3) fraud or corruption by a Board member