INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, LOCAL UNION NO. 34, AFL–CIO, Plaintiff,

v.

GENERAL PIPE COVERING, INC., Western Insulation Services, Inc., Thermal Insulation Supply Corp., Donna M. Dingley, and Sheldon L. Dingley, Defendants.

Civ. No. 4–85–565.

United States District Court,
D. Minnesota,
Fourth Division.

July 11, 1985.

Stephen D. Gordon, Robins, Zelle, Larson & Kaplan, St. Paul, Minn., for plaintiff.

J. Dennis O'Brien, LaFevere, Lefler, Kennedy, O'Brien & Drawz, P.A., Minneapolis, Minn., for defendant.

## ORDER

LORD, Senior District Judge.

On April 11, 1985, plaintiff filed suit under the Labor Management Relations Act against General Pipe Covering, Inc., and others seeking enforcement of an arbitration award. *See* 29 U.S.C. § 185. Plaintiff is the International Association of Heat and Frost Insulators and Asbestos Workers, Local Union No. 34 (Asbestos Workers Union), and is a labor organization representing employees in an industry affecting commerce. 29 U.S.C. § 141 *et seq.* (LMRA). Defendants General Pipe Covering, Inc. (General Pipe), Western Insulation Services, Inc., and Thermal Insulation Supply Corporation are companies employing

people in an industry affecting commerce. The Union and General Pipe Covering, Inc. are parties to a collective bargaining agreement, the 1981–1984 Trade Agreement between the Asbestos Workers and the Thermal Insulation Contractors Association. The Agreement, among other things, forbids employers to contract out specified work. It also provides a dispute resolution process for "differences in interpretation" of the Agreement. *See* Trade Agreement Article IV, § 1; Article VI, § 1; Article XI. The agreement creates a six-person "Trade Board" consisting of three union and three employer members. *Id.*, Article IV. The Board is given the power to investigate "all labor operations" of the parties, and all "[t]rade disputes or grievances" are submitted to the Board when the parties fail to agree. The Trade Board also has power to impose "fines or othe[r] penalties" on either party, and is charged with the duty to "see that any fines or penalties ... are satisfied." *Id.*

The union's business agent filed a grievance against General Pipe Covering on February 12, 1985. He alleged that the company had violated the agreement by performing union work in the guise of "Western Insulation Services, Inc.," or by subcontracting work to that firm. By letter of March 5, the business agent notified Donna and Sheldon Dingley, the principals of General Pipe, that the union intended to pursue this grievance before the Trade Board. The Contractors Association notified General Pipe in a letter dated March 11, 1985, that the Trade Board would meet to hear the case on March 15, 1985. Defendants admit that Donna Dingley received this letter "on or after" the following day, March 12. Defendants' Memorandum in Support of Motion to Vacate Trade Board Award at 4. One of the employers' representatives on the Board called Donna Dingley the morning of the meeting, but she stated she would not attend. *See* Plaintiff's Exhibit P. The Trade Board therefore proceeded in the Dingleys' absence, and voted unanimously that General Pipe had violated the labor agreement. The Board then voted 5–1 to fine General Pipe $75,000.

■ The federal courts are not appellate tribunals for the review of such arbitration awards. Courts may not reexamine the merits of the award so long as it "draws its essence" from the collective bargaining agreement. *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

■ Defendant General Pipe raises basically three arguments in opposing plaintiff's motion to enforce this award. The first is procedural. Defendant argues that the Trade Board's *ex parte* hearing deprived it of due process of law. Due process, however, only requires the arbitrator to give a party notice of the hearing and an opportunity to be heard. *E.g.*, *Totem Marine Tug & Barge, Inc. v. North American Towing*, 607 F.2d 649, 651 (5th Cir.1979); *Ryan-Walsh Stevedoring Co., Inc. v. General Longshore Workers Union, Local 3000 of Intern. Longshoremen's Ass'n.*, 509 F.Supp. 463, 467 (E.D.La.1981). The union's business agent here notified defendants some ten days before the hearing that the union had decided to press its claims before the Trade Board. By their own admission, defendants received notice of the time and place of the meeting at least "one to three days" beforehand. Defendant's Memorandum in Support of Motion to Vacate Trade Board Award at 4. The head of the Contractors Association, who was also a Trade Board member, went so far as to call Donna Dingley the morning of the hearing to remind her of it. She simply declined to attend. Clearly a party may not vitiate its agreement to arbitrate by simply refusing to participate in the proceedings. And as another judge of this court has noted, "[i]t is well settled that an arbitrator may determine a grievance in the absence of a party who has failed to attend a hearing after being duly notified of it." *I.B.E.W. Local No. 292 v. Hedstrom Electric, Inc.*, Civ. No. 4–82–39, slip

op. at 6 (D.Minn., Oct. 5, 1982) (Murphy, J.), *and see* cases cited therein. *See also Retail Store Employees Local 954 v. Lion Dry Goods,* 67 L.R.R.M. 2871 (N.D.Ohio 1966), *aff'd* 67 L.R.R.M. 2873 (6th Cir.1967), *cert. den.* 390 U.S. 1013, 88 S.Ct. 1264, 20 L.Ed.2d 163 (1968) ("[w]e would be in a state of anarchy if the parties ... could avoid decisions by the simple process of taking their dolls and going home"). When defendants chose to ignore the Trade Board meeting, they did so at their peril.

Defendant next argues that this award is "punitive" rather than compensatory, and should be vacated for that reason. Plaintiff responds that the award is in fact compensatory, and is based on the Trade Board's estimate of the damages union members suffered as a result of the employer's conduct. Plaintiff's argument that this award is designed to compensate the union for its members' losses seems disingenuous at best. The trade agreement between the parties expressly gives the Trade Board the authority to levy "fines or penalties." *See* Trade Agreement, Art. IV, § 1 F. According to the minutes of the meeting, the Board itself labelled this award a "fine." *See* Plaintiff's Exhibit P at 4. Moreover, the fines the Board collects are to be turned over to charity, not to the union. *See* Trade Agreement, Art. Art. IV, § 1F; *and* Plaintiff's Exhibit P at 4. Even if the fine in fact reflected the Board's estimate of the union's damages, this award was not "compensation" to the union in either intent or effect. The Trade Board clearly wished to punish General Pipe for its breach of the labor agreement, and did so.

■ It nevertheless does not follow that defendant is now entitled to a judicial pardon. Punitive arbitration awards are, of course, generally disfavored in labor law. *See Westinghouse Electric Corp. v. I.B. E.W. Local 1805,* 561 F.2d 521, 523 (4th Cir.1977); *Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.,* 298 F.2d 277, 282 (3d Cir.1962) (opinion of Staley, J.). This policy has led courts to refuse to enforce them *"[i]n the absence of any provi-* sion [in the agreement] for punitive awards." United Electrical, Radio and Machine Workers of America, Local 11390 v. Litton, 704 F.2d 393, 398 (8th Cir.1983) (emphasis added) (refusing to enforce "punitive" portion of award), *rev'd* en banc 728 F.2d 970, 972 (8th Cir.1984) (finding award arguably compensatory). These holdings place a limit on the broad discretion arbitrators enjoy in fashioning remedies. *See United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. at 1361; *see also Litton, supra,* 704 F.2d at 401 (Arnold, J., dissenting). Where an arbitrator has entered a punitive award without contractual authority, courts often refuse enforcement on the ground that the award does not "draw its essence" from the parties' agreement. *E.g., Baltimore v. Regional Joint Board v. Webster Clothes,* 596 F.2d 95, 98 (4th Cir.1979).

■ That is hardly the case here. The trade agreement clearly gives the Board the power to impose punitive awards. Indeed, the contract does not expressly authorize the Board to make any other kind of award. Where the parties have called forth such a creature by their contract, they must live with its edicts. *See Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 679 (7th Cir.1983), *cert. den.,* —— U.S. ——, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983).

Finally, the defendants have moved this court to stay its proceedings and order the parties to further arbitration. This motion is based on the two-step arbitration clause contained in the Trade Agreement. After enumerating the powers of the Trade Board, the Agreement provides that "[a]ny controversy which cannot be settled informally by the Trade Board parties shall be referred to a neutral arbitrator chosen by mutual agreement of the parties...." Trade Agreement, Art. IV, § 2. In defendant's view this provision makes the Trade Board a rather toothless organism, one that either party may ignore if it wishes. Defendant believes this court must order the parties to arbitration now that defendant has exercised that option. Plaintiff contends, on the other hand, that this lan-

guage requires third party arbitration only when the vote of the six-member Trade Board is evenly split.

Plainly the relative merits of these competing interpretations are not before this court. The question of an arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator. *W.R. Grace v. Local Union 759, supra,* 461 U.S. at 765, 103 S.Ct. at 2183. Here, the Trade Board was the arbitrator chosen by the parties. The Board clearly decided it had the power to fine General Pipe, even though it did not explain this finding in the record. Arbitrators are not required to supply courts with reasons for all the conclusions embodied in their awards. *United Steelworkers v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 593, 80 S.Ct. at 1358. If the award in fact decides the disputed issue, a court may not overturn it simply the accompanying opinion is incomplete. *Air Line Pilots Ass'n v. Northwest Airlines,* 498 F.Supp. 613, 620–621 (D.Minn.1980). *See also W.R. Grace and Co. v. Local Union 759, supra,* 461 U.S. at 767 n. 10, 103 S.Ct. at 2184 n. 10. The award, rather than the explanation of it, controls. *Air Line Pilots Ass'n, supra.* Here, the Trade Board decided it had the power to penalize General Pipe, and proceeded to do so. This decision plainly drew its "essence" from the parties' agreement. There it ends. *United Steelworkers v. Enterprise Wheel & Car Corp., supra; Safeway Stores v. Bakery Workers, Local 111,* 390 F.2d 79, 84 (5th Cir. 1968).

In addition, plaintiff has moved the court for a prejudgment writ of attachment, a temporary restraining order, and a temporary injunction in aid of arbitration under *Boys Markets* to preserve the status quo. *See generally Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The issuance of a writ of attachment is controlled by state law, and Minnesota has always committed the matter to the "sound discretion" of the court. *Pierse v. Smith,* 1 Minn. 82 (Gil. 60, 63) (1851). This court does not feel that plaintiff has introduced sufficient facts demonstrating the need for this "extraordinary remedy," *id.,* and that the matter is now moot. *See Beigler v. Chamberlin,* 145 Minn. 104, 106, 176 N.W. 49, 50 (1920). This court did not grant plaintiff's motion for a temporary restraining order following the initial hearing on this matter for much the same reasons. The two brief affidavits outlining the plaintiff's fears have not convinced the court of the pressing necessity for extraordinary relief. *See Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981). Nor is the court prepared to grant plaintiff an injunction. No evidentiary hearing, as required by the Norris-La Guardia Act, has been requested or held. *See* 29 U.S.C. § 107; *U.A.W. Local 1051 v. Lester Eng. Co.,* 718 F.2d 818, 823–24 (6th Cir.1983). The court at this point does not feel sufficiently conversant with the facts surrounding the demise of General Pipe to enable it to confidently issue an injunction in this labor dispute. *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union,* 471 F.2d 872, 876–877 (6th Cir. 1972).

It is nevertheless clear that defendant's decision to ignore the Trade Board proceedings and its refusal to comply with the resulting award were without justification. Therefore, an award of attorney's fees to the union is proper. *General Drivers and Helpers Union Local 554 v. Young and Hay Transportation Co.,* 522 F.2d 562, 568 (8th Cir.1975).

Therefore, based on all the files, records, affidavits, and memoranda herein, and on the arguments of counsel, IT IS HEREBY ORDERED:

1) That plaintiff's motion to confirm the arbitration award issued by the Trade Board in this matter on March 15, 1985, be and is granted;

2) That plaintiff's motions for a writ of attachment, and for injunctive relief be and are denied;

3) That defendant's motions to vacate the arbitration award and to stay these

proceedings pending resort to further arbitration be and are denied;

4) That plaintiff be awarded all reasonable attorney's fees incurred in bringing its motion to confirm the arbitration award.

IT IS SO ORDERED.