INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, LOCAL UNION 34, AFL–CIO, Appellee,

v.

GENERAL PIPE COVERING, INC., Western Insulation Services, Inc., Thermal Insulation Supply Corp., Donna M. Dingley and Sheldon L. Dingley, Appellants.

No. 85–5319.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1986.

Decided May 15, 1986.

J. Dennis O'Brien, Minneapolis, Minn., for appellants.

Stephen D. Gordon, Minneapolis, Minn., for appellee.

Before HEANEY and BOWMAN, Circuit Judges, and HANSON,* Senior District Judge.

HEANEY, Circuit Judge.

General Pipe Covering, Inc. (General Pipe), appeals from a district court order, 613 F.Supp. 858 (1985), granting appellee's motion to confirm an arbitration award.

General Pipe, a commercial insulation business owned by Donna and Sheldon Dingley, was a member of the Thermal Insulation Contractors' Association (TICA) and, as such, was bound by a collective bargaining agreement (Trade Agreement or Agreement) between TICA and the International Association of Heat and Frost Insulators and Asbestos Workers Local No. 34 (Local 34). The Trade Agreement covered the rates of pay, rules, and working conditions of the insulation workers, and established a grievance and arbitration procedure. It created a six-person "Trade Board," consisting of three employer and three union members, which had the power to investigate the labor operations of the parties, hear trade disputes, and impose fines or penalties for violations of the Agreement.

On February 12, 1985, Local 34 filed a grievance with the Trade Board alleging that General Pipe had violated the Trade Agreement by diverting union work to Western Insulation Services, Inc. (Western Insulation),[1] a nonunion shop also owned by the Dingleys. Although General Pipe had notice that the Trade Board planned to

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Trade Agreement, Article VI, states:
   **Section 1.** No subcontracting by Employer. No contracting by Employees. The Employers agree that they will not sublet or contract out any work described in Article XI and the Union agrees not to contract, subcontract or estimate on work nor allow its membership to do so nor to act in any trade capacity other than that of workman. It is also agreed that no member of a firm or officer of a corporation or their representative or agents shall execute any part of the work of application of materials and in no case shall any member of the Union estimate on or give any labor figures.

consider the matter at its March 15, 1985, meeting, it did not send a representative and, instead, wrote a letter stating that "[a]s of February 28, 1985, General Pipe Covering, Inc. will be ceasing operation. All union personnel will be laid off." Appellants' Appendix at 82. The Trade Board found that General Pipe had violated the Trade Agreement, causing a loss to Local 34 members of wages and benefits worth approximately $75,000. It ordered General Pipe to pay that amount to the American Lung Association on behalf of Local 34, pursuant to the Trade Agreement. General Pipe did not comply with the order. Accordingly, on April 11, 1985, Local 34 filed suit in district court against General Pipe, Western Insulation, Thermal Insulation Supply Corporation,[2] and the Dingleys, seeking to enforce the arbitration award. It also filed a motion for a temporary injunction and a writ of attachment. General Pipe filed motions to stay proceedings, compel additional arbitration, and vacate the arbitration award. The district court denied General Pipe's motions. It granted Local 34's motions to confirm the arbitration award, denied its motions for injunctive relief and for a writ of attachment, and awarded it attorneys' fees. This appeal followed.

## I. JURISDICTION.

General Pipe argues that the district court did not have jurisdiction to confirm the Trade Board's award pursuant to 9 U.S.C. § 9,[3] because the Trade Agreement did not provide that "a judgment of the court shall be entered upon the award made pursuant to the arbitration." We need not reach this issue, as Local 34 also claimed jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which also authorizes federal courts to enforce arbitration awards.[4] *See General Drivers, Warehousemen & Helpers, Local Union No. 89 v. Riss & Co.,* 372 U.S. 517, 519, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963) (award of Joint Area Cartage Committee); *Kallen v. District 1199, National Union of Hospital and Health Care Employees,* 574 F.2d 723, 725 (2d Cir.1978) (jurisdiction independent of 9 U.S.C. § 9).

General Pipe also argues that the district court lacked jurisdiction because there was no final and binding award by a neutral arbitrator. Federal courts have approved the use of trade boards to resolve disputes under collective bargaining agreements. *See e.g., Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *General Drivers,* 372 U.S. at 519, 83 S.Ct. at 791; *NLRB v. Wolff & Munier, Inc.,* 747 F.2d 156 (3d Cir.1984); *Early v. Eastern Transfer,* 699 F.2d 552 (1st Cir.), *cert. denied,* 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983); *Teamsters*

**Section 2.** In order to protect and preserve, for the employees covered by this agreement, all work heretofore performed by them as specified under Article XI of this Agreement, it is agreed: that if and/or when an Employer shall perform work covered by this Agreement, under its own name, or is involved in any type of business enterprise performing such work, this Agreement shall be applicable to all such work performed. Appellants' Appendix at 66.

2. On February 27, 1985, Western Insulation was merged into Thermal Insulation Supply Corporation, another firm incorporated by the Dingleys. Appellants' Supplemental Appendix at 45, 50.

3. 9 U.S.C. § 9 provides, in pertinent part:
If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the

arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

4. Because the district court had jurisdiction under 29 U.S.C. § 185, we also need not consider General Pipe's argument that applications to confirm under 9 U.S.C. § 9 must be made and heard as a motion to the court.

*Freight Employees Local Union No. 480 v. Bowling Green Express,* 707 F.2d 254 (6th Cir.1983); *Chicago Cartage Co. v. International Brotherhood of Teamsters,* 659 F.2d 825 (7th Cir.1981); *Barrentine v. Arkansas-Best Freight System,* 615 F.2d 1194 (8th Cir.1980), *rev'd on other grounds,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). As this Court stated in *Barrentine,* however,

> [a] forceable argument can be made * * * that the kind of arbitration in question is subject to grave abuses, including, notably, collusive secret agreements between employers and unions as a result of which the interests of individual * * * grievants may be sacrificed to arrangements that management and union labor may consider to be in their own broader interests.

*Barrentine,* 615 F.2d at 1201.

Courts have not hesitated to set aside awards of joint employer/union committees where they have found that the committee members had interests adverse to those of the grievants. *See Morales v. Vega,* 579 F.2d 677 (1st Cir.1978) (courts should consider allegations that members of committee conspired to deprive grievant of first-amendment rights); *Kirkland v. Arkansas-Best Freight System,* 475 F.Supp. 180 (E.D.Ark.1979) (award set aside where union members of committee did not fairly represent all employees and where process violated fundamental rules of fairness), *aff'd in part, rev'd in part on other grounds,* 629 F.2d 538 (8th Cir.1980) (reversed only as to damages), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 814 (1981); *Allsbrook v. Consolidated Freightways,* 100 L.R.R.M. (BNA) 2153 (E.D.Pa. 1978) (use of arbitration procedure not required where adverse interests). General Pipe has failed to show, however, that the proceedings were fundamentally unfair. Accordingly, if the award of the Trade Board "is under the collective bargaining agreement final and binding, the District Court has jurisdiction under § 301 to enforce it." *See General Drivers,* 372 U.S. at 519, 83 S.Ct. at 791.

General Pipe contends that the award was not final and binding because, under the Trade Agreement, General Pipe was entitled to a subsequent proceeding before a neutral arbitrator. Article IV, section 2 of the Agreement states: "Any controversy which cannot be settled informally by the Trade Board parties shall be referred to a neutral arbitrator chosen by mutual agreement of the parties." Appellants' Appendix at 70. A question thus arises as to the meaning of "Trade Board parties." If, as General Pipe argues, it refers to the parties to the Trade Agreement, General Pipe's refusal to participate in the Trade Board proceeding and to abide by the Trade Board's decision could arguably entitle it to a further proceeding before a neutral arbitrator.[5] If, on the other hand, "Trade Board parties" refers to the members of the Trade Board itself, General Pipe would have been entitled to a neutral arbitrator only if the Trade Board had not been able to reach a decision by a majority vote.

We agree with the Trade Board and the district court that the latter is the correct interpretation. The Trade Board's treatment of its award as final is persuasive. "Because the authority of arbitrators is a subject of collective bargaining, just as is any other contractual provision, the scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 765, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). Additionally, any other interpretation would be illogical. As the district court points out, if either party could ignore the decisions of the Trade Board, the Trade Board would be a "toothless organism." Order at 5. More impor-

---

5. We note, however, that a more likely consequence of General Pipe's total refusal to participate in the proceedings would have been its abandonment of any rights it may have had to a neutral arbitrator.

tantly, the Trade Agreement expressly provides for "cases where the parties to [the] Agreement fail to agree;" in those cases "the matter in dispute shall be referred to the Joint Trade Board." Appellants' Appendix at 69. We therefore conclude that the Trade Board's award was final and binding and that the district court had jurisdiction to confirm it under section 301.

## II. STANDARD OF REVIEW.

■ Since we find that the district court had jurisdiction to confirm the arbitration award, we must consider whether it applied the correct standard of review. Federal labor policy encourages arbitration as one major method of achieving industrial peace. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960).

> Under well-established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.

*W.R. Grace*, 461 U.S. at 764, 103 S.Ct. at 2182 (citations omitted).

This Court's review, therefore, is limited to determining whether the Trade Agreement gave the Trade Board authority to make its award. *Zeviar v. Local No. 2747, Airline, Aerospace and Allied Employees, IBT*, 733 F.2d 556, 559 (8th Cir.1984); *see* 9 U.S.C. § 10(d). We "must broadly construe the agreement and resolve all doubts in favor of the [Trade] Board's authority." *Zeviar*, 733 F.2d at 559.

■ General Pipe argues that this Court should vacate the Trade Board's award because the Trade Agreement did not authorize the award of punitive damages. This argument is clearly without merit even though, as General Pipe points out, the award was punitive in nature. Although punitive arbitration awards are generally disfavored, *see, e.g., Westinghouse Electric Corp. v. I.B.E.W. Local 1805*, 561 F.2d 521, 523 (4th Cir.1977), *cert. denied*, 434 U.S. 1036, 98 S.Ct. 771, 54 L.Ed.2d 783 (1978), courts enforce them where they are authorized by the collective bargaining agreement, *see, e.g., United Electrical, Radio & Machine Workers v. Litton Microwave Cooking Products*, 728 F.2d 970 (8th Cir.1984); *Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981). In this case, the Agreement expressly stated that where either party violated any of its provisions, "[t]he Trade Board [would] have the power to impose fines or other penalties." Appellants' Appendix at 70. The Agreement further authorized the Trade Board to collect any fines or penalties and donate them to charity. *Id.* As the district court found, therefore, the Trade Board had the authority to assess a fine against General Pipe.

■ Although the Trade Board had the general authority to assess a fine, our inquiry must go one step further, as there may be merit to General Pipe's argument that the Trade Board exceeded its authority in fining General Pipe $75,000. The Supreme Court has stated that "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. * * * [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). General Pipe argues that since the fine imposed was substantially greater than the Trade Board's usual award of $5,000 per infraction, the fine did not draw its essence from the Trade Agreement. It contends that *United Steelworkers v. War-*

*rior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), requires the Trade Board's previous practice of limiting its awards to $5,000 to be incorporated into the Agreement. We do not agree with this application of the rule in *Warrior*.[6] Although the *Warrior* Court did state that "the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it," *id.* at 581–82, 80 S.Ct. at 1352–53, the Court formulated this rule to extend the reach of the arbitrator, not to limit it. This was in keeping with the Court's central premise that "[d]oubts should be resolved in favor of coverage." *See id.* at 583, 80 S.Ct. at 1353. Additionally, the record does not clearly demonstrate either that the $5,000 limit had been an established practice, or that the $75,000 award violated any $5,000 per infraction limit that may have been established.

■ Because the district court decided only that the Agreement authorized punitive awards, and did not consider whether the size of the award took the award outside of the Trade Board's authorization, we must reverse the district court to the extent that it confirmed the award, and remand for a consideration of the award's size. On remand, there are a number of points that the district court should consider. The Supreme Court has stated:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. * * *
>
>  \*   \*   \*   \*   \*   \*
>
> * * * A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.

*Enterprise Corp.*, 363 U.S. at 596–98, 80 S.Ct. at 1360–61.

On the other hand, an arbitrator "cannot assume existence of facts central to the award if there is no support therefor in the record." *See Manhattan Coffee Co. v. International Brotherhood of Teamsters, Local No. 688*, 743 F.2d 621, 623 (8th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 2323, 85 L.Ed.2d 842 (1985). Finally,

> [a]lthough an arbitrator is not required to make formalized findings or to offer reasons for his decisions, when he does so, a court may properly consider them. A court may also consider other evidence extrinsic to the award that will assist it in determining whether the award draws its essence from the collective bargaining agreement.

*United Electrical*, 704 F.2d at 397 (citations omitted).

The district court may, therefore, allow both parties to present evidence, including, but not limited to, evidence regarding the Trade Board's previous awards and General Pipe's violations of the Trade Agreement.[7]

## III. ATTORNEY'S FEES.

■ General Pipe argues that the district court should not have awarded to Local 34 the attorneys' fees it incurred in bringing its motion to confirm the arbitration award. It contends that, under the circumstances, its challenge of the Trade Board's award was justified.

> Attorneys' fees are ordinarily not recoverable by the prevailing party in federal litigation unless authorized by statute or justified by circumstances in which the losing party has acted in bad faith. Attorneys' fees are not authorized by statute in suits to enforce arbitration awards.

---

**6.** While we do not agree that the $5,000 limit became a binding part of the Agreement through the Trade Board's past practice, it is one factor which may be considered in determining whether the fine imposed was within the essence of the Agreement.

**7.** Notwithstanding the fact that General Pipe, through its refusal to participate in the arbitration proceeding, may be responsible for the scanty record of which it now complains, we believe that justice will best be served by allowing it an opportunity to present its evidence on these matters.

*Lackawanna Leather Co. v. United Tool & Commercial Workers International Union,* 706 F.2d 228, 232 (8th Cir.1983) (en banc) (citations omitted).

Although "[a]n unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees," *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. United Farm Tools, Inc., Speedy Mfg. Division,* 762 F.2d 76, 77 (8th Cir.1985), General Pipe's challenge of the award was justified, as shown by the necessity for a remand. We must, therefore, reverse the district court's award of attorneys' fees.

Accordingly, we affirm the district court to the extent that it accepted jurisdiction over this matter and found that the Trade Board had authority to impose a fine against General Pipe. We reverse and remand to the extent that the district court confirmed the arbitration award, with directions to consider whether the amount of the award took it beyond the Trade Board's authority, and reverse the award of attorneys' fees.