803 F.2d 412
 123 L.R.R.M. (BNA) 2789, 105 Lab.Cas. P 12,077
 LuAnn K. WALSH, Appellee,
v.
UNION PACIFIC RAILROAD COMPANY, Appellant.
Brotherhood of Railway, Airline and Steamship Clerks &
Freight Handlers, Express and Station Employees, Brotherhood
of Railway, Airline and Steamship Clerks & Freight Handlers,
Express and Station Employees, Union Pacific-Lines East
System Board of Adjustment No. 106.
 No. 85-2337 NE Civil.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 16, 1986.
Decided Oct. 14, 1986.
 
 Brenda Joyce Council, Omaha, Neb., for appellant.
 Bruce H. Abrahamson, Omaha, Neb., for appellee.
 Before GIBSON and FAGG, Circuit Judges, and SWYGERT, Senior Circuit Judge.*
 SWYGERT, Senior Circuit Judge.
 
 
 1
 LuAnn Walsh was employed as a file clerk in the Union Pacific Railroad's engineering department. On June 10, 1977 she requested a thirty-day leave of absence. Leave was granted but she was told that she would have to be examined by a company doctor if she wished to have her leave extended. Walsh did not do this. Instead, at the end of the thirty-day leave of absence, Walsh delivered a note to the company by her personal physician, stating that she should have medical leave for an additional sixty days because of pregnancy. The company twice asked Walsh's personal physician to provide a detailed report supporting the request for the sixty-day leave extension. Walsh's doctor did not respond to the company's request and did not advise Walsh that the request had been made. On August 8, 1977 Walsh was fired. The purported basis of her dismissal was Rule 43(f) of the collective bargaining agreement negotiated between the railroad and the Brotherhood of Railway, Airline and Steamship Clerks ("BRAC"), Walsh's authorized representative. Rule 43(f) states that: "Failure to report for duty at the expiration of leave of absence shall terminate an employee's service and seniority, unless a reasonable excuse for such failure is furnished not later than ten days after expiration of leave of absence."
 
 
 2
 On August 23, 1977 BRAC requested a post-termination hearing pursuant to Rule 43(g) of the collective bargaining agreement. Rule 43(g) provides that an employee "voluntarily leaving" or absent from duty without "proper leave of absence" (except in cases of illness) will be terminated, but conditions this termination upon the holding of a formal hearing. The request for a hearing was denied on August 24, 1977 on the basis of the railroad's belief that Rule 43(f) and not Rule 43(g) applied to Walsh's termination. Negotiations between BRAC and the railroad ensued but to no avail. On December 21, 1982 the railroad and the union agreed to establish a special adjustment board (Public Law Board No. 3314) as permitted by the Railway Labor Act. 45 U.S.C. Sec. 153 Second.
 
 
 3
 Public Law Board No. 3314 heard arguments from both the railroad and the union, and on May 29, 1983 rendered Award No. 4 ordering Walsh's reinstatement but without backpay or benefits. The Board stated that:
 
 
 4
 The Board concurs with the Carrier's view that the Claimant had the responsibility to furnish the reasons for the requested medical leave of absence; and when the Chief Engineer wrote Dr. Taylor on July 14, 1977 that the Carrier's Medical Director wanted a detailed report of the reasons for granting an extension, the Claimant should have taken steps to see her doctor honored this request. The Claimant cannot put herself on leave or extend her leave by inference or assumption. The Claimant had to take positive measure to secure an extension of her existing leave. However, the only flaw in the record is that the Chief Engineer did not inform the Claimant that her physician was not complying with the Medical Director's request. While the Board admits it is difficult for a patient to get a doctor to comply with a third party's request, nevertheless, the Carrier should have put her on notice that her physician was not honoring a valid request.
 
 
 5
 The union and the railroad adopted Award No. 4 and Walsh resumed her employment on July 18, 1983. Nevertheless, on November 29, 1983 she filed a complaint against both the railroad and the union in the United States District Court for the District of Nebraska seeking recovery for wrongful discharge and breach of duty of fair representation and to have Award No. 4 set aside.
 
 
 6
 In a series of memorandum opinions and orders culminating in an appealable final order issued on September 30, 1985 the district court dismissed the wrongful discharge and fair representation claims, but set aside Award No. 4 and entered judgment in the amount of $130,253.63 against the railroad in backpay benefits. The district court held that the Board award failed to "draw its essence" from the collective bargaining agreement and was thus unenforceable. See United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
 
 
 7
 It is well-established that if an arbitrator's award does not draw its essence from the collective bargaining agreement, the reviewing court must vacate or modify the award. International Brotherhood of Electrical Workers v. Sho-Me Power, 715 F.2d 1322, 1325 (8th Cir.1983). But in determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's award. Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, 706 F.2d 228, 230-31 (8th Cir.1983 (en banc). The test "is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of the contract." Brotherhood of Railway, Airline & Steamship Clerks v. Kansas City Terminal Railway, 587 F.2d 903, 906-07 (8th Cir.1978), cert. denied, 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979) (quoting Diamond v. Terminal Railway Alabama State Docks, 421 F.2d 228, 233 (5th Cir.1970)).
 
 
 8
 The district court felt justified in setting aside the arbitrator's award because "the Board's decision does not follow logically from its findings of fact." Specifically, the district court noted that the Board itself was not convinced that the blame for the termination lay solely with Walsh. The Board acknowledged that the railroad should have informed Walsh of her physician's failure to respond to its inquiries. As we read the district court's decision, having found that Walsh did not bear sole blame, the Board was required by the terms of the bargaining agreement to find that she deserved a complete vindication. The court observed that: "Under the circumstances, the Court finds that the plaintiff complied with the terms of the collective bargaining agreement." The court further found that Walsh "was not culpable to any degree." These rulings by the district court flatly contradict the findings of the Board. We cannot approve of the district court's usurption of the authority vested by Congress in the Public Law Board.
 
 
 9
 In this case the Board was presented with a question requiring it to interpret, and possibly to choose between, two provisions of a collective bargaining agreement. As we read its decision the Board found that neither party had fully lived up to the spirit of the agreement. The award it issued was the Board's obviously well-considered attempt to balance the conduct of the parties in light of the terms of the existing labor contract. Matters of contract interpretation are committed to the arbitrator. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960). Ambiguities in the opinion accompanying an award are normally not a reason for refusing to enforce an award. Steelworkers v. Enterprise Wheel, 363 U.S. at 597-98, 80 S.Ct. at 1361. "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations." Id. at 597, 80 S.Ct. at 1361. In this case the district court refused to permit the arbitrator to exercise that flexibility.
 
 
 10
 In Zeviar v. Local No. 2747, Airline, Aerospace & Allied Employees, 733 F.2d 556 (8th Cir.1984), this court affirmed a district court decision dismissing a petition for review of an arbitration award. In Zeviar, as in this case, the employee had been dismissed for being absent without leave. In Zeviar, as in this case, the arbitrator found that neither party was completely blameless. In Zeviar, the arbitrator ordered the employee reinstated but with only half of lost wages because "she too was at fault." Id at 558. In Zeviar, as in this case, the employee claimed that partial exoneration required, under the terms of the collective bargaining agreement, reinstatement with full backpay. We rejected that argument stating that: "In the absence of full exoneration [the agreement] does not require an award of full back pay. Thus the Board had authority to exercise its discretion in formulating a remedy, and the award drew its essence from the collective bargaining agreement." That this case is controlled by Zeviar could not be clearer. The district court's attempt to distinguish the case is unpersuasive and relies on what seems to be a misreading of the Board's findings.
 
 
 11
 The decision of the district court is REVERSED and the award of Public Law Board No. 3314 is REINSTATED.
 
 
 12
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 13
 I respectfully dissent. The district court concluded that reinstatement of Walsh and denial of back pay "fails to draw its essence from the collective bargaining agreement." In my opinion, the district court did not err in so concluding.
 
 
 14
 The collective bargaining agreement, Rule 45(c), provides as follows:
 
 
 15
 If the final decision decrees that charges against the employe were not sustained, the record shall be cleared of the charge; if suspended or dismissed, the employe shall be reinstated and compensated for any loss of wages.
 
 
 16
 Where an employe is dismissed or suspended from service for cause and subsequently it is found that such discipline was unwarranted and the employe is restored to service with pay for time lost, earnings in other employment shall be used to offset the loss of earnings. (Emphasis added.)
 
 
 17
 In granting Award No. 4, Public Law Board No. 3314 concluded that "the record does not support the termination" of Walsh. This is an express finding that the charges against Walsh were not sustained. Rule 45(c) thus requires that the record be cleared of the charge and that Walsh be reinstated and compensated for any loss of wages; the Board has no discretion to deny compensation for loss of wages.
 
 
 18
 The Memorandum of Agreement signed by the parties authorizing the formation of Public Law Board No. 3314 provides as follows:
 
 
 19
 The Board shall not have jurisdiction of disputes growing out of requests for changes in rates of pay, rules and working conditions, and shall not have authority to change existing agreements governing rates of pay, rules and working conditions, and shall not have the right to write new rules.
 
 
 20
 This limiting provision deprives the Board of authority to change existing agreements or write new rules. This, however, is precisely what the Board did in this case. The district court correctly determined that the Public Law Board had violated the express language of the collective bargaining agreement and the Memorandum of Agreement when it denied back pay after finding that the record did not support termination. The situation is similar to that in International Union of Operating Engineers, Local 9 v. Shank-Artukovich, 751 F.2d 364 (10th Cir.1985), wherein the court stated:
 
 
 21
 Article VII, Sec. 5 of the collective bargaining agreement at issue here contains express language that required the employer to pay damages if it violates the manning provision of the agreement. The agreement is unequivocal:
 
 
 22
 If violations of the manning provisions ... are found by ... the Arbitrator and if an individual(s) is found entitled to back pay, the same shall be paid by the violator, but if no individual is found entitled to damages the violator shall remit such damages to the Trustees of the Colorado Journeymen and Apprentice Training Fund for Operating Engineers.
 
 
 23
 The plain language of the agreement contemplates damages whenever the employer violates the manning provisions of the agreement. If no individual is entitled to damages, the agreement requires the employer to pay damages to the union training fund.
 
 
 24
 The arbitrator found that the employer had violated the manning provisions of the agreement. He also concluded that no individual was entitled to backpay. However, he ruled that the employer was not required to pay damages to the union training fund. His decision did not draw its essence from the collective bargaining agreement. It was contrary to the express terms of the agreement.
 
 
 25
 Id. at 366.
 
 
 26
 Zeviar v. Local No. 2747, 733 F.2d 556 (8th Cir.1984), does not require a different result. Zeviar dealt specifically with the collective bargaining agreement's use of the word "exonerated." In Zeviar, the collective bargaining agreement provided that if an employee is "exonerated," she should be reinstated and paid for lost time. We concluded that the chairman did not consider Zeviar to be fully exonerated in the sense of bearing no responsibility for her discharge. Accordingly, the Board was free to exercise its discretion in formulating a remedy. The collective bargaining agreement in this case is substantially different, referring only to the situation where the charges "were not sustained"; exoneration is not an issue. The Board's conclusion that the record did not "support the termination" comes squarely within the language of Rule 45(c) and thus, unlike the situation in Zeviar, leaves no room for the exercise of discretion.
 
 
 27
 As the award was directly contrary to the express terms of the agreement, the district court did not err in its determination that the Public Law Board's award did not draw its essence from the contract. I would affirm the judgment of the district court.
 
 
 
 *
 The Honorable Luther M. Swygert, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation