LOCAL 144, HOTEL, HOSPITAL, NURSING HOME & ALLIED SERVICES UNION, SEIU, AFL–CIO, Petitioner,

v.

AMERICAN NURSING HOME, Bruckner Nursing Home/BNH Mgt., Clove Lakes Nursing Home, Fort Tryon Nursing Home, Franklin Nursing Home, Lyden Nursing Home, and Williamsbridge Manor, Respondents.

No. 86 Civ. 37 (WCC).

United States District Court, S.D. New York.

March 25, 1986.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Sarah E. Siskind, of counsel), for petitioner.

Gibson, Dunn & Crutcher, New York City (Jonathan L. Sulds, of counsel), for respondents.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Petitioner Local 144, Hotel, Hospital, Nursing Home & Allied Services Union, SEIU, AFL–CIO ("Local 144" or "the union") brought this action pursuant to section 301(a) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a) (1982), and section 9 of the United States Arbitration Act of 1925, as amended, 9 U.S.C. § 9 (1982), to confirm an arbitration award enforcing the provisions of a collective bargaining agreement. For the reasons set forth below, Local 144's petition to confirm the arbitration award is granted.

*Background*

Local 144 is a "labor organization" within the meaning of section 301(a) of the Labor Management Relations Act. It maintains its principal office in Manhattan. Respondents are residential health care facilities, or nursing homes. They are located in New York City, and they employ members of Local 144.

The respondent nursing homes are members of the Southern New York Residential Health Care Facilities Association, Inc. ("Southern New York"). On November 30, 1984, Southern New York entered into an agreement with Local 144 extending a previous collective bargaining agreement. *See* Agreement dated November 30, 1984, Exh. A to Petition [hereinafter cited as "1984 agreement"]. The 1984 agreement incorporated a broad arbitration clause of the predecessor contract that required the parties to submit any dispute between them involving questions of interpretation of the agreement to an "Impartial Chairman" for resolution. *Id.* ¶ I; 1981–1984 Blue Book, ¶ 8(G), Exh. B to Petition.

The 1984 agreement also provided for Local 144's members to receive a 6.5% wage increase retroactive to July 15, 1984. In paragraph II(J), however, the parties expressly recognized that the nursing homes had to "receive full [Medicaid] reimbursement from the State of New York ... for all [their] labor costs in order to implement the economic terms and conditions of this Agreement." 1984 agreement ¶ II(J). The parties indicated that they had negotiated the wage and benefit increases "with specific reference to the labor trend factor set forth by the State of New York in calculating reimbursement rates." *Id.* The State had represented to the parties that the "labor trend factor" for 1984 would be 5.5%. Accordingly, the parties agreed that if a nursing home's labor costs were reimbursed at less than the labor trend factor, or if a nursing home's labor costs increased in excess of the trend factor, the nursing home could seek a reduction in the wages and benefits it had agreed to pay equal to the amount of its

unreimbursed labor costs. *Id.* The agreement established a "Reimbursement Review Panel" to hear and determine all claims for relief arising out of the reimbursement clause. *Id.* ¶ II(K).

Local 144 has submitted an affidavit from a certified public accountant stating that the labor trend factor for 1984 for each of the respondents was 5.51%. *See* Affirmation of Simon Schwarz ¶ 8. However, respondents claimed that their labor costs for the year had increased in excess of that factor, and refused to pay the 6.5% wage increase. On April 26, 1985, Local 144 filed a grievance and demanded arbitration of the dispute before Impartial Chairman Lois A. Rappaport ("Rappaport"). On May 9, 1985, respondents notified Local 144 that they intended to petition the Reimbursement Review Panel for relief pursuant to paragraphs II(J) and II(K) of the 1984 agreement.

On July 10, 1985 and July 17, 1985, Rappaport convened hearings on Local 144's grievance. Respondents contended that, given the pendency of their petitions for reimbursement relief, the Impartial Chairman had no authority to hear the union's grievance. In short, they argued that since the Reimbursement Review Panel had exclusive jurisdiction to decide questions arising from the reimbursement clause, the Panel, and not the Impartial Chairman, should decide whether respondents were required to pay the wage increase. *See* Impartial Chairman's Award, Exh. C to Petition at 5–6. Local 144, on the other hand, argued that the arbitration clause of the 1984 agreement gave the Impartial Chairman the jurisdiction to decide "all disputes between the parties." The union conceded that the Reimbursement Review Panel had exclusive jurisdiction to decide questions arising out of the reimbursement clause; however, it argued that while respondents had the right to petition the Panel for reimbursement relief, they were still obliged to abide by the terms of the collective bargaining agreement while such proceedings were pending. Thus, Local 144 asserted that the Impartial Chairman had the jurisdiction to enforce the terms of the 1984 agreement, including payment of the wage increase. *Id.* at 6.

In an award and decision dated September 13, 1985, Rappaport concluded that in view of the broad arbitration clause, she did have jurisdiction over Local 144's grievance. She reasoned that while the Reimbursement Review Panel should hear and determine respondents' claims for relief, she had jurisdiction to decide whether respondents had failed to honor the terms of the contractual provision for the implementation of the wage increase. *Id.* at 7.

Rappaport also concluded that respondents had violated the terms of the wage increase. She recognized that the agreement clearly stated that each nursing home must receive full reimbursement for all of its labor costs as a condition precedent to the wage increase specified in the agreement. *Id.* at 8. On the other hand, she noted that respondents did not contend that they had received no reimbursement whatsoever, only that they had not received *full* reimbursement. She reasoned that whatever monies were received by respondents should have been earmarked for the wage increase, and concluded that respondents "are not free to collect the reimbursement which they had agreed under the collective bargaining agreement was to pay wage increases and to delay the payment of those increases until they get a pronouncement from the Reimbursement Review Panel as to the amount of relief they would receive, if any." *Id.* at 9.

Accordingly, Rappaport declared that

the amount received as reimbursement, up to and including 5.5%, should have been paid as part of the negotiated 6.5% July 1984 wage increase and is due and owing and must be paid. ... Furthermore, no question has been raised before the Impartial Chairman as to the payment of the difference between [the] 6.5% wage increase and the 5.5% labor trend factor, i.e. 1.0%. If this 1.0% has not been paid to the employees, then, it too is due and owing and is to be paid.

*Id.* at 10. Rappaport directed respondents to pay this money forthwith. She further directed that "[i]f the monies are not paid within thirty (30) days from the date of this Award, interest at the current legal rate will accrue as of the date of this Award." *Id.*

Respondents did not move to vacate the award, but also did not comply with its terms. As a result, on January 2, 1986, Local 144 petitioned the Court for an order confirming the award and directing respondents to comply with it. As indicated above, Local 144 has submitted an affidavit from a certified public accountant stating that the labor trend factor for 1984 for each of the respondents was 5.51%. Respondents have not disputed that statement. Accordingly, Local 144 argues that under the terms of Rappaport's award, respondents are obligated to pay the entire 6.5% wage increase, and request the Court to direct respondents to do so.

*Discussion*

■ The Court's role in a proceeding to confirm or vacate an arbitration award is extremely limited. *See, e.g., United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596–99, 80 S.Ct. 1358, 1360–62, 4 L.Ed.2d 1424 (1960); *Advance Publications, Inc. v. Newspaper Guild, Local 3,* 616 F.2d 614, 616–18 (2d Cir.1980); *International Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Texas Steel Co.,* 538 F.2d 1116, 1120–21 (5th Cir.1976), *cert. denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). Because federal policy strongly favors resolving labor disputes by arbitration, a court may not review the merits of a labor arbitration award. *Enterprise Wheel & Car Corp.,* 363 U.S. at 596, 80 S.Ct. at 1360. Nor may a court vacate an arbitration award "on the ground that the arbitrators erred in their factual findings, or that the arbitrators reached faulty legal conclusions, or that the proceedings were flawed." *Mitchell v. United Parcel Serv.,* 624 F.2d 394, 397 (2d Cir. 1980), *rev'd on other grounds,* 451 U.S. 56, 451 U.S. 56, 67 L.Ed.2d 732 (1981); *Texas Steel,* 538 F.2d at 1120–21. Indeed, a reviewing court's only function is to determine whether the arbitration award "draws its essence from the collective bargaining agreement." *Enterprise Wheel & Car Corp.,* 363 U.S. at 597, 80 S.Ct. at 1361. If the award does so, it must be enforced. *Id.*

In determining whether an arbitration award "draws its essence" from a collective bargaining agreement, a court must interpret the "essence" standard expansively so as to uphold the award. *Texas Steel,* 538 F.2d at 1121. To that end, if an arbitrator has explained the basis for his award " 'in terms that offer even a barely colorable justification for the outcome reached,' " a reviewing court must confirm the award even though the litigants might argue persuasively for a different result. *Advance Publications,* 616 F.2d at 617 (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir.1978)). So long as "the arbitration award could reasonably have been derived from the terms of the contract itself," the award must be confirmed. *Ottley v. Sheepshead Nursing Home,* 688 F.2d 883, 890 (2d Cir.1982).

I have little hesitation in holding that Rappaport's award draws its essence from the terms of the 1984 agreement between the parties. Rappaport's conclusion that she had jurisdiction to hear and decide the question presented to her readily finds support in the broad arbitration clause of the agreement. Her decision on the merits, while not compelled by the terms of the agreement, is also clearly defensible. The agreement provided that if respondents received full reimbursement for their labor costs, Local 144's members would receive a 6.5% wage increase; if respondents received less than full reimbursement, they could seek a reduction of the wage increase. The agreement did not expressly state whether respondents were required to pay all or part of the wage increase pending an application for relief to the Reimbursement Review Panel. Respondents themselves have admitted that reimbursement questions are complicated matters that can result in lengthy proceedings. Ac-

cordingly, Rappaport could easily conclude that the parties did not intend protracted hearings to delay the implementation of at least part of the bargained-for wage increase. Whether I would have reached the same result is not the relevant question. Under the principles set out above, the only issue is whether Rappaport's reasoning offers at least "a barely colorable justification" for her decision. I have no doubt that it does.

■ Respondents nonetheless argue that the Court should not confirm Rappaport's decision because the award is neither final nor binding on the parties. *See* 9 U.S.C. § 10(d) (1982). They argue that the very fact that Rappaport did not determine the precise amount respondents are required to pay to Local 144's members demonstrates the interim nature of her award. Respondents argue that Rappaport did not specify what wage increase will finally be due because she could not; the parties, in their agreement, established that only the Reimbursement Review Panel could do so. Respondents argue that under these circumstances, Rappaport's "award is subject to change at any time by the award of the Reimbursement Review Panel and, therefore, plainly not final." Affidavit of Jonathan L. Sulds ¶ 20.

Local 144 argues that I need not even address this argument because, under the rule established in *Florasynth, Inc. v. Pickholz,* 750 F.2d 171 (2d Cir.1984), respondents are precluded at this stage of the proceedings from raising any defenses to a confirmation of the award. In *Florasynth,* our court of appeals held that under the United States Arbitration Act ("USAA"), "a party may not raise a motion to vacate, modify, or correct an arbitration award after the three month period [to move to vacate the award] has run, even when raised as a defense to a motion to confirm." *Id.* at 175. The court stated that "[w]hen the three month limitations period has run without vacation of the arbitration award, the successful party has a right to assume the award is valid and

untainted, and to obtain its confirmation in a summary proceeding." *Id.* at 177.

Surprisingly, respondents have not even addressed this argument. Nonetheless, I am far from certain that the teachings of *Florasynth* are applicable to this case. In *Florasynth,* the petitioner had moved to confirm the award under the USAA; accordingly, the ninety-day limitations period to move to vacate the award prescribed by that statute was obviously applicable. However, in this case, Local 144 alleges that the Court's subject matter jurisdiction is based on section 301 of the Labor Management Relations Act ("LMRA"). *See* Petition ¶ 1. In entertaining motions to confirm labor arbitration awards under the LMRA, federal courts do not apply the limitations period of the USAA; instead, they "borrow" an appropriate limitations period from state law. *See UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 704–5, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966); *Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1026 (7th Cir.1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 942, 67 L.Ed.2d 111 (1981). In this case, the appropriate state law would appear to be New York's Civil Practice Law and Rules ("CPLR") §§ 7510, 7511 (McKinney 1980).

Under CPLR § 7511, as under the USAA, an unsuccessful party to an arbitration proceeding has ninety days to move to vacate the award. However, unlike the procedure under the USAA, the losing party "may simply omit the motion and wait until the victor moves to confirm the award. At that time the loser may oppose the confirmation upon the same ground which he could have raised on a motion to vacate or modify." J. McLaughlin, *Practice Commentary* to CPLR § 7511, at 578–79 (McKinney 1980); *see also id.* § 7510, at 555; *In re Grayson-Robinson Stores, Inc.,* 7 A.D.2d 367, 183 N.Y.S.2d 695 (per curiam), *appeal denied mem. sub nom. Grayson-Robinson Stores, Inc. v. Iris Constr. Corp.,* 8 A.D.2d 698, 185 N.Y.S.2d 746 (1st Dep't 1959), *aff'd,* 8 N.Y.2d 133, 202 N.Y.S.2d 303, 168 N.E.2d 377 (1960).

Accordingly, if CPLR § 7511 provides the applicable limitations period for this action, it would appear that respondents may interpose their defense, notwithstanding the court of appeals' decision in *Florasynth.*

I need not resolve this question, however, since it is clear that respondents' argument is in any event unavailing. A final award is one "intended by the arbitrators to be [a] complete determination of all claims submitted to them." *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 413 (2d Cir.1980). By contrast, an interim ruling does not purport to resolve finally the issues submitted to the arbitrators. Such an interim decision is not subject to judicial review and confirmation. *Id.; Local 144, Hotel, Hospital, Nursing Home & Allied Servs. Union v. Caton Park Nursing Home*, No. 85 Civ. 2090 (JFK) (S.D.N.Y. Feb. 10, 1986).

There can be little question that Rappaport's decision was intended to be a complete determination of the issues that were before her. Rappaport answered the question raised by the union's grievance— whether respondents were required to pay all or part of the 6.5% wage increase during the pendency of respondents' application to the Reimbursement Review Panel for relief. There is no suggestion in the award and decision that Rappaport expected to address that question again or to modify her award at some later date. Admittedly, Rappaport evidently foresaw that the Reimbursement Review Panel might at some future time determine that respondents were entitled to a reduction in the wage increase they had agreed to pay. However, she could not know, as I cannot know now, whether the Review Panel will rule that respondents are entitled to a reduction. Thus, as far as Rappaport could tell, and as far as I can tell, her decision that respondents are required to pay the wage increase may never be changed. Since Rappaport's award does not in any way suggest that she intended to reconsider the question before her at a future time, I conclude that the award is final, and not an interim decision.

I believe that Judge Keenan's recent decision in *Local 144, Hotel, Hospital, Nursing Home & Allied Servs. Union v. Caton Park Nursing Home*, No. 85 Civ. 2090 (JFK) (S.D.N.Y. Feb. 10, 1986), supports my conclusion. In *Caton Park,* Judge Keenan granted Local 144's petition to confirm several arbitration awards directing another group of nursing homes to pay the same 6.5% wage increase that is the subject of the award in this case. In opposition to the petition to confirm, the employers in *Caton Park,* like respondents in this case, argued that the awards were not "final" because they were rendered without prejudice to future applications to the Reimbursement Review Panel for reimbursement relief. Judge Keenan rejected the argument, stating that the fact that "the arbitrator stated that at some future time the health care facilities could apply for relief under the reimbursement clause and demonstrate that they had been inadequately reimbursed by the State of New York" did not render the award interim, rather than final, in nature. *Id.* at 5–6.

In support of their argument that Rappaport's decision is not a final award, respondents have cited *Bell Aerospace Co. v. Local 516, Int'l Union, UAW*, 500 F.2d 921 (2d Cir.1974), *United Steelworkers v. Timken Roller Bearing Co.*, 324 F.2d 738 (6th Cir.1963), and *Teamsters Local No. 25 v. Penn Transp. Corp.*, 359 F.Supp. 344 (D.Mass.1973). As Local 144 has pointed out, the real issue in those cases was not the "finality" of the awards in question, but whether they were clear in their meaning and effect. I do not understand respondents to suggest that Rappaport's award is ambiguous, self-contradictory, or otherwise unclear. While respondents make a point of stating that Rappaport did not specify a particular amount that respondents are to pay to the union's members, respondents have not indicated that they are uncertain what the amount of the award is. As noted above, Local 144 has stated that Rappaport's decision requires respondents to pay the entire 6.5% wage increase. Respondents have not disputed that contention, and I therefore assume

**360**

that they agree that the award directs them to do so. I further assume, since respondents have not suggested otherwise, that the parties can easily compute the dollar amount of that award and the appropriate interest on it.

For all of these reasons, I conclude that Rappaport's decision is a final award, and that there is no justifiable reason to vacate it. Accordingly, I will confirm the award and direct respondents to comply with it.

■ In addition to confirmation of the award, respondents seek to recover their costs and attorney's fees in bringing this petition. In the context of the labor arbitration process, attorney's fees have been awarded where a party has refused, without justification, to abide by an arbitration award. *See, e.g., United Steelworkers v. United States Gypsum Co.*, 492 F.2d 713, 734 (5th Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974); *Local 1115 v. B & K Inv., Inc.*, 100 L.R.R.M. 2174, 2177 (S.D.N.Y.1978). In this case, Local 144 argues that the award clearly draws its essence from the collective bargaining agreement, and that the law on that subject is now so well settled that respondents' refusal to abide by the award was vexatious and in bad faith. Moreover, the union argues that if there was a palpable basis for refusing to comply with the award, it was incumbent upon respondents to move to vacate the award within the ninety-day limitations period prescribed by the USAA.

As noted above, I think there is little doubt that the award derived from the terms of the agreement. However, respondents did not seriously contend that it did not; rather they argued that the award was not final. Moreover, contrary to the union's position, it is not clear, as noted above, that respondents were required to raise this defense within the ninety-day limitations period. Thus, the question is whether respondents' argument that the award was not final was essentially frivolous. While I have concluded that that argument is without merit, I cannot say that it is so lacking in substance so as to

make respondents' actions vexatious. For these reasons, the union's application for costs and attorney's fees is denied.

*Conclusion*

For the reasons set forth above, Local 144's petition to confirm the arbitration award of Lois A. Rappaport dated September 13, 1985 is granted. Respondents are directed to comply with its terms forthwith. Local 144's application for costs and attorney's fees incurred in connection with this petition is denied.

SO ORDERED.