**INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS, LOCAL NO. 12, Petitioner,**

v.

**INSULATION QUALITY ENTERPRISES, LTD., Respondent.**

**No. CV–87–3583.**

United States District Court, E.D. New York.

Jan. 4, 1988.

Edward J. Groarke, Colleran, O'Hara & Mills, Mineola, N.Y., for petitioner.

Thomas J. Bianco, Kaufman, Frank, Schneider & Rosensweig, Melville, N.Y., for respondent.

GLASSER, District Judge:

Petitioner International Association of Heat and Frost Insulators, Local No. 12 ("the union") brought this action to confirm an award of a Joint Trade Board finding that the respondent Insulation Quality Enterprises, Ltd. ("the employer") failed to make certain fringe benefit payments as required by the Collective Bargaining Agreement between the union and the employer. The action was originally filed in the Supreme Court of the State of New York, Queens County, and was removed by petition of the employer to this Court on

October 22, 1987. The Petition for Removal asserts that the Court has subject matter jurisdiction over this action under § 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185, and the United States Arbitration Act, 9 U.S.C. § 10.

The union now moves to confirm the Joint Trade Board Award. The employer cross-moves to vacate the award and dismiss the union's petition.

*Facts*

The union and the employer entered into two collective bargaining agreements covering the periods July 1, 1981 through June 30, 1984 ("Agreement I") and July 1, 1984 through June 30, 1987 ("Agreement II"). Article VIII of the Agreements obligates the employer to make contributions to the Welfare, Pension, Holiday and Unemployment, Vacation, and Annuity Funds. Addenda to the Agreements require the employer to make industry promotional fund and dues check-off payments. Article X specifies which employees are covered under the Agreements.

Article V of the Agreements establishes a Joint Trade Board comprising five members of the Insulation Contractors Association and five members of the union. The Agreement provides:

> [S]aid Trade Board shall have the right to investigate all labor operations of the parties to this Agreement within its prescribed limits so far as any of the provisions of this Agreement are involved, in connection with which any question may arise, and for this purpose shall have the right to summon, question and examine any party to this Agreement, or their representatives or agents.

The Agreement further provides:

> Trade disputes or grievances shall be settled without cessation of work and in cases where the parties to this Agreement fail to agree the matter in dispute shall be referred to the Joint Trade Board.

The Trade Board is to decide questions by majority vote. Article V empowers the Trade Board to "impose fines, interest where appropriate or other penalties where agreed by vote" and provides that, with respect to "any fines or penalties so imposed," the Trade Board shall decide the "charitable disposition of monies so collected." Finally, Article V provides:

> 6. If a deadlock occurs in the joint trade board arbitration may be requested. The cost of arbitration shall be as described by the American Arbitration Association.

Article XVII of Agreement II, a provision not contained in Agreement I, makes the terms of the Agreement applicable to all covered on-site construction work within the applicable territory performed by the employer under its own name or under the name of another entity. (Article XVII(a)) Article XVII provides:

> (b) All charges of violations of paragraph (a) of this section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

The "arbitrator [or arbitration body] provided in this Agreement" (brackets in original) is authorized to require the employer to pay lost wages to employees and delinquent contributions to the union trust funds. Article XVII also requires the employer to pay any attorney's fees and costs incurred by the union in pursuing court action to enforce an award under Article XVII(b) or defending an action to vacate such an award.

On February 13, 1987, the union filed a request for arbitration with the Joint Trade Board, and served the employer with a demand for arbitration of the union's claim that the employer had failed to make required contributions to various union funds for the period January 1, 1983 through June 30, 1986. (Sore Affidavit, Ex. F)[1]

---

1. In support of its motion, the union has submitted an Affidavit of John Sore (a member of the Joint Trade Board), sworn to November 25, 1987, and an Affidavit of Joseph Stern (the auditor of the union funds), sworn to November 24, 1987. The employer has submitted an Affidavit of its president William Jackson, sworn to October 26, 1987.

After notice (Jackson Affidavit ¶ 11; Sore Affidavit ¶ 3), the Joint Trade Board convened on April 28, 1987 to hear the dispute. (Sore Affidavit ¶ 3) The union was represented by counsel at the hearing; the union's auditor Mr. Stern was present; Mr. Jackson, the president of the employer, appeared without counsel. (Sore Affidavit ¶ 3, Ex. B, p. 2) Mr. Jackson had previously received a copy of Mr. Stern's "Incomplete Audit Report" (Jackson Affidavit Ex. A) setting forth the union's initial calculations of the amounts due under its claim. (Jackson Affidavit ¶ 10)

Mr. Jackson maintains that he attended the April 28 hearing expecting it to be an informal discussion session, discovered that four of the employer's competitors were members of the Board, participated in the hearing, but then left the proceedings when his requests for an adjournment to obtain counsel were denied. (Jackson Aff. ¶¶ 12–15) Mr. Sore, a member of the Joint Trade Board, maintains that Mr. Jackson was given a full opportunity to participate in the hearing before the Board. (Sore Affidavit ¶¶ 3, 9)

The Joint Trade Board's unanimous award of June 18, 1987 (Sore Affidavit, Ex. B) was served on Mr. Jackson on July 6, 1987. (Jackson Affidavit ¶ 18; Sore Affidavit Ex. G) The findings of the Joint Trade Board's award included the following:

4. Insulation Quality Enterprises violated the terms of the Collective Bargaining Agreement by failing to make proper fringe benefit payments on wages paid to its employees.

5. The following funds were affected by the contractor's failure to make proper payments under the Collective Bargaining Agreement: Welfare Fund, Vacation Fund, Pension Fund, Annuity Fund, Industry Promotion Fund and Dues Check-Off Fund.

6. Insulation Quality Enterprises, LTD violated the Contract by making cash payments to men who were members of Local #12 who were performing covered work, which payments were not shown on the books, and therefore, did not include contributions to the various Funds.

7. Insulation Quality Enterprises, LTD violated the terms of the Contract by making additional payments to men on its payroll during the period 01/01/83 through 12/31/84 and not making appropriate fringe benefits on these amounts.

8. Insulation Quality Enterprises, LTD violated the terms of the Contract by making payments to wives of members of Local #12 which were payments on behalf of the men performing covered work and which payments did not include payments to the Funds.

The Joint Trade Board found that the employer owed $56,910.43 to various union funds, $11,626.84 in interest on such amount, $3,113.00 in audit fees, and $3,500.00 in legal fees incurred by the union in connection with the Joint Trade Board hearings. The amounts due the Funds and interest were based upon a final audit report (Sore Affidavit, Ex. E) prepared by Mr. Stern after the hearing at the request of the Joint Trade Board. (Sore Affidavit ¶ 8; Stern Affidavit ¶ 8)

The union now seeks an order confirming the Joint Trade Board's award as a final, binding, and enforceable arbitral award. The employer cross-moves to vacate the award, arguing that the Joint Trade Board had no power to issue a binding arbitral award, that the award fails "to draw its essence" from the Agreement and exceeded the Board's authority, and that the employer did not receive adequate notice or a fair hearing.

For the reasons set forth below, the award of the Joint Trade Board is confirmed except insofar as it grants attorney's fees. The award is modified to eliminate the granting of such fees.

*The Timeliness of the Employer's Motion to Vacate*

The union contends that the employer's counterclaim and motion to vacate the arbitral award are untimely under the United States Arbitration Act, 9 U.S.C. § 12 as interpreted by the United States Court of Appeals for the Second Circuit in *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d

Cir.1984). The Court in *Florasynth* held that the three month statute of limitations contained in 9 U.S.C. § 12 applies to a motion to vacate an arbitral award "even when raised as a defense to a motion to confirm." *Id.* at 175.

The employer was served with the Joint Trade Board's June 18, 1987 award on July 7, 1987. The employer filed a counterclaim and a cross-motion to vacate the award on October 27, 1987, more than three months later. Thus, if *Florasynth* were applicable, the employer would be precluded from raising the grounds for vacatur listed in 9 U.S.C. § 10, *e.g.*, partiality, improper refusal of an adjournment, other misbehavior prejudicing the rights of a party, the arbitral tribunal's exceeding its powers.

The Court, however, is persuaded that *Florasynth* is not applicable to an action brought pursuant to § 301 of the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185. As recently noted by the United States Supreme Court in another context, the United States Arbitration Act does not control a court's disposition of an action based upon § 301 of the LMRA but merely serves as a source for guidance in the fashioning of governing rules of federal common law. *United Paperworkers International Union v. Misco, Inc.*, — U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

While the United States Court of Appeals for the Second Circuit has not yet addressed whether the statute of limitations set forth in 9 U.S.C. § 12 is applicable to actions to vacate arbitral awards under § 301 of the LMRA, the relevant Supreme Court and Second Circuit case law indicates that the limitations period of N.Y.C.P.L.R. § 7511 should apply. The Supreme Court has discussed the issue of statute of limitations in three § 301 suits: *International Union, United Automobile, Aerospace & Agricultural Implement Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981); and *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In *Hoosier*, an action

for breach of a collective bargaining agreement under § 301, the Court held that, in the absence of an applicable federal statute of limitations, "the timeliness of a § 301 suit ... is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." 383 U.S. at 704–05, 86 S.Ct. at 1112. The court held that the state statute of limitations governing actions based on contracts not in writing was applicable but cautioned: "Whether other § 301 suits different from the present one might call for the application of other rules on timeliness, we are not required to decide, and we indicate no view whatsoever on that question." *Id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7.

In *Mitchell* the Court construed an employee's suit against his employer and union challenging an arbitral award upholding the plaintiff's discharge as akin to action to vacate an arbitral award and held that the New York statute of limitations governing such actions applied. The Court held that the determination of which statute of limitations applies depends on "an examination of the nature of the federal claim and the federal policies involved." 451 U.S. at 60–61, 101 S.Ct. at 1563. Although the federal interest in the " 'relatively rapid disposition of labor disputes,' " 451 U.S. at 63, made the short New York statute of limitations appropriate, the Court did not address whether the limitations period contained in § 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), was a more appropriate statute of limitations. 451 U.S. at 60 n. 2, 101 S.Ct. at 1562–63 n. 2.

In *DelCostello*, however, the Court held that the six month limitations period of § 10(b) of the NLRA applied to a hybrid § 301/breach of duty of fair representation action brought by employees against their employers and unions. The Court held that the statute of limitations in § 10(b) afforded the employee sufficient time to retain counsel and prepare to bring the action and provided one statute of limitations for suits against both the employer and union, while at the same time was sufficiently short in duration so as not to defeat the federal

policy favoring rapid resolution of labor disputes. 462 U.S. at 165–69, 103 S.Ct. at 2291–93. The Court, however, reaffirmed its earlier holdings that "resort to state law remains the norm for borrowing statute of limitations periods." 462 U.S. at 171, 103 S.Ct. at 2294.

While the Second Circuit has applied *Del-Costello* and the six month statute of limitations to an employee's action alleging his union's breach of its duty of fair representation, *Demchik v. General Motors Corp.*, 821 F.2d 102 (2d Cir.1987), and to an action under § 301 of the LMRA to compel arbitration, *Associated Brick Mason Contractors v. Harrington*, 820 F.2d 31 (2d Cir. 1987), the Court, in an action by union members alleging a scheme by the union to suppress dissent, applied the three-year state statute of limitations for personal injury actions rather than the six-month statute of limitations of § 10(b) of the NLRA and cautioned that *DelCostello* should be narrowly construed. *Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 976 (2d Cir.1987). These decisions indicate that *DelCostello* should be limited to hybrid § 301/duty of fair representation suits or at least to those suits which "involve an immediate and direct impact on labor-management relations." *Rodonich*, 817 F.2d at 976 (quoting *Monarch Long Beach Corp. v. Soft Drink Workers, Local 812*, 762 F.2d 228, 231 (2d Cir.), *cert. denied*, 474 U.S. 1020, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985)). The Court has expressly distinguished § 301 actions to enforce arbitral awards governed by state statutes of limitations from those § 301 actions calling for application of the shorter § 10(b) statute of limitations because actions to enforce arbitral awards do not involve the uncertainty of the status of a labor grievance present in other § 301 suits. *Associated Brick Mason Contractors*, 820 F.2d at 37.

None of these cases discuss the applicability of the statute of limitations of the United States Arbitration Act. The United States District Court for the Southern District of New York has reached differing conclusions as to the applicability of the United States Arbitration Act statute of limitations to actions to confirm or vacate arbitral awards brought under § 301 of the LMRA. *Contrast Local 10, American Communications Ass'n v. RCA Global Communications, Inc.*, 124 L.R.R.M. (BNA) 2349 (S.D.N.Y. Sept. 8, 1986) [Available on WESTLAW, 1986 WL 10276] *and Local 144, Hotel, Hospital, Nursing Home & Allied Services Union v. American Nursing Home*, 631 F.Supp. 354 (S.D.N.Y. 1986) (state statute of limitations should apply) *with International Longshoremen's Ass'n v. Jugolinija Line*, 124 L.R.R.M. (BNA) 2769 (S.D.N.Y. Nov. 3, 1986) [Available on WESTLAW, 1986 WL 12713] *and Colavito v. Hockmeyer Equipment Corp.*, 605 F.Supp. 1482 (S.D.N.Y.1985) (United States Arbitration Act statute of limitations applies).

The weight of authority in other circuits appears to favor the state statute of limitations governing actions to vacate arbitral awards as the appropriate limitations period for actions to vacate or the assertion of affirmative defenses to the enforcement of arbitral awards under § 301 of the LMRA. *E.g., International Brotherhood of Electrical Workers v. Babcock & Wilcox*, 826 F.2d 962 (10th Cir.1987); *Champion International Corp. v. United Paperworkers International Union*, 779 F.2d 328 (6th Cir.1985) (rejecting federal Arbitration Act statute of limitations); *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266 (7th Cir. 1985); *United Brotherhood of Carpenters & Joiners, Local 1020 v. FMC Corp.*, 724 F.2d 815 (9th Cir.1984); *see Derwin v. General Dynamics Corp.*, 719 F.2d 484 (1st Cir.1983) (rejecting federal Arbitration Act statute of limitations in action to enforce arbitral award). *But see American Postal Workers Union v. United States Postal Service*, 823 F.2d 466 (11th Cir.1987) (borrowing U.S. Arbitration Act statute of limitations in action to vacate arbitral award under Postal Reorganization Act).

In view of the Supreme Court's admonition in *United Paperworkers International Union v. Misco, Inc.*, —— U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), that the United States Arbitration Act is not controlling in arbitration cases under § 301 of

the LMRA and the authorities specifically rejecting the statute of limitations of the Arbitration Act in such cases, the Court holds that the limitations period of 9 U.S.C. § 12 is not applicable to the employer's motion to vacate the arbitral award in the instant action. Since *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir.1984), was a decision interpreting 9 U.S.C. § 12, that decision is not relevant here.

Section 7511(a) of the New York Civil Practice Law and Rules provides a ninety day statute of limitations for actions to vacate or modify arbitral awards. New York law, however, also permits a party to wait until the victor in the arbitration moves to confirm the award and then raise as defenses the same grounds he could have raised on a motion to vacate or modify. This option is available to the party opposing confirmation of the award even if the action to confirm is filed more than ninety days after delivery of the award. *State Farm Mutual Automobile Insurance Co. v. Fireman's Fund Insurance Co.*, 121 A.D.2d 529, 504 N.Y.S.2d 24, 25 (2d Dep't 1986); N.Y.C.P.L.R. Practice Commentaries C7510:1, C7511:1 (McKinney 1980); *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984). Under N.Y.C. P.L.R. § 7510, the prevailing party in an arbitration has one year after delivery of the award within which to commence an action to confirm the award.

Application of the New York statute of limitations is appropriate here. An action to vacate an arbitral award under New York law is directly analogous to the action here. The relatively rapid resolution of labor disputes is not undercut since all questions concerning enforceability of the arbitral award will be resolved in actions filed within a year of delivery of the award. Uniformity is promoted in the sense that state statutes of limitations have generally been applied in actions to vacate arbitral awards under § 301 of the LMRA and forum shopping between New York state and federal courts is discouraged.

Thus, while the employer did not file its motion to vacate within ninety days of delivery of the award, the employer's arguments in support of its cross-motion to vacate are timely-raised in response to the union's motion to confirm.[2] Application of the state statute of limitations works no particular hardship on the union since the union originally filed this action in state court and would not have been able to argue that a federal statute of limitations applied had the employer not removed the action to federal court.

*Judicial Review of the Award*

▇▇ Judicial review of a labor arbitration award has a very limited scope. As stated by the Supreme Court:

Under well-established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one. *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 [80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424] (1960). When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," *id.*, at 597 [80 S.Ct. at 1361] a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous. *Id.*, at 598 [80 S.Ct. at 1361–62].

*W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed. 2d 298 (1983). The court may not consider the merits of an award "even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers International Union v. Misco, Inc.*, — U.S. —, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The

**2.** Although the instant action is not an action by an employee alleging breach of a duty of fair representation such as the actions in *DelCostel-*

*lo,* the union's cross-motion to vacate would also be timely if the six month statute of limitations of the NLRA were applicable.

court may not set aside an award because it is ambiguous or contains no supporting reasons, *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361–62, 4 L.Ed.2d 1424 (1960), and "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco,* ——— U.S. at ———, 108 S.Ct. at 371. *See United States Steel & Carnegie Pension Fund v. Dickinson,* 753 F.2d 250, 252 (2d Cir.1985) ("barely colorable justification" sufficient to uphold arbitrator's award).

Thus, although the employer argues that the Joint Trade Board has incorrectly interpreted the Agreements by, for example, applying the Agreements to non-covered employment, the Court is precluded from inquiring into the merits of the underlying dispute between the parties or second guessing the Joint Trade Board's interpretation of the Agreements.

*The Joint Trade Board Award as an Arbitral Decision*

The employer argues that the Joint Trade Board was not authorized to act as an arbitral tribunal and that its award is therefore not final and binding. The employer contends that proceedings before the Joint Trade Board are an intermediate step which can only bind the parties if they voluntarily accept the Trade Board's decision. If one party rejects the Trade Board's decision, the employer argues, a "deadlock" occurs under Article V of the Agreements, and only then do the parties proceed to arbitration.

 First, the Court notes that any doubts as to the arbitrability of a dispute should be resolved in favor of arbitration.[3] *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *Butchers, Food Handlers & Allied Workers Union v. Hebrew National Kosher Foods, Inc.,* 818 F.2d 283, 286 (2d Cir.1987); *Wire*

*Service Guild, Local 222 v. United Press International, Inc.,* 623 F.2d 257, 260 (2d Cir.1980); *see* 29 U.S.C. § 173(d).

 Second, the Court finds the employer's interpretation of Article V strained and illogical. Article V gives the Joint Trade Board broad powers to investigate all labor operations and provides that all labor disputes which cannot be settled by the parties shall be referred to the Joint Trade Board. The "deadlock" to which Article V(6) refers is most rationally construed to refer to an even split in the voting of the Joint Trade Board, which is made up of an equal number of members of the Insulation Contractors Association and union members. The employer's interpretation of the term "deadlock" would make the Joint Trade Board a "toothless organism." *See International Ass'n of Heat & Frost Insulators v. General Pipe Covering, Inc.,* 792 F.2d 96, 99 (8th Cir.1986). The decision of the Joint Trade Board is thus an arbitral award, final and binding upon the parties unless the employer can establish sufficient grounds for its vacatur.

*The Contractual Basis for the Award*

The employer argues that the Joint Trade Board award does not "draw its essence" from the Agreements because the Agreements did not authorize the Joint Trade Board to direct the employer to pay benefits to the funds or to award audit and attorney's fees. The employer contends that Article V requires that any money collected by the Joint Trade Board be paid to charities.

 The Agreements expressly require that the employers make contributions to specific union funds and an industry promotional fund and dues check-off payments. An alleged failure to make such payments is thus a proper subject of arbitration under the Agreements. Since there is a colorable basis for the Joint Trade Board's award, the merits of the Trade Board's interpretation of the Agreements will not be examined further.

---

**3.** The employer's reliance on *Schneider Moving & Storage Co. v. Robbins,* 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), for the principle that the presumption of arbitrability does not apply to disputes between an employer and

fund trustees is misplaced since this is an action between an employer and a union, the parties to the collective bargaining agreement. The trustees are not parties to this action.

■ The Agreements authorize the Joint Trade Board to resolve labor disputes, an authority which would often be meaningless were the Joint Trade Board not permitted to render a decision awarding back pay, damages, or back benefits to one of the parties. Article XVII of Agreement II also specifically authorizes the arbitrator under the Agreement to require the employer to pay delinquent contributions to the union funds. Article V(5), which gives the Joint Trade Board the power to pay "fines or penalties" to charities, does not address awards of back benefits or damages. Article V(5) also authorizes awards of interest (as awarded in the instant case) and does not include "interest" on the monies to be paid to charity. The Joint Trade Board's award of audit fees has a basis in Article VIII(3) of the Agreements which imposes upon the employer the costs incurred by the union in conducting an audit if the employer has been delinquent in reporting the payment of benefits or dues check-offs. The Joint Trade Board's award of back benefits, interest, and audit fees therefore "draws its essence" from the Agreements.

■ The award of attorney's fees, however, does not "draw its essence" from the Agreements. The Agreements do not authorize the award of attorney's fees incurred in the arbitration, and such an award is only proper if the arbitration agreement provides for the payment of attorney's fees. *Domke on Commercial Arbitration* § 43.01 (rev. ed. 1984); T. Oehmke, *Commercial Arbitration* § 3:37 (1987). The award of the Joint Trade Board will therefore be vacated to the extent that it awards the union $3,500.00 in legal fees.

*Partiality*

■ The employer argues that the Joint Trade Board award should be set aside because four of the employer's competitors were members of the Joint Trade Board. (Jackson Affidavit ¶ 12). This general allegation is the only fact upon which the employer bases its claim of partiality. The employer's claim must fail for several reasons: First, the instant case does not present the problem of a failure to disclose a fact or relationship which could result in

bias or partiality. *Cf. Commonwealth Coatings Corp. v. Casualty Corp.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). According to Mr. Jackson's Affidavit, he discovered at the Joint Trade Board meeting that four of the Board members were competitors of the employer. Moreover, the presence of competitors on the Board was clearly foreseeable given the composition of the Board mandated by the Agreements.

■ Second, the party attacking the arbitral award bears the burden of proving partiality, a burden the employer has not met here. *See Colavito v. Hockmeyer Equipment Corp.*, 605 F.Supp. 1482, 1488 (S.D.N.Y.1985). Mere speculation is not enough to establish bias, *Sofia Shipping Co. v. Amoco Transport Co.*, 628 F.Supp. 116, 119 (S.D.N.Y.1986), and sufficient facts must be proved so that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984).

Finally, given the special nature and composition of the Joint Trade Board established by the Agreements, the mere presence of the employer's competitors on the Board should not invalidate the arbitral award. The expertise of Board members well-versed in the practices of a particular industry was presumably a quality sought by the parties in establishing the Joint Trade Board as the arbitral tribunal. As stated in *Morelite Construction Corp.*, 748 F.2d at 84:

In assessing a given relationship, courts must remain cognizant of peculiar commercial practices and factual variances. Thus, the small size and population of an industry might require a relaxation of judicial scrutiny, while a totally unnecessary relationship between arbitrator and party may heighten it.

*The Fairness of the Joint Trade Board Proceedings*

■ The employer argues that the Joint Trade Board did not receive adequate proof of the union's claim, improperly allowed Mr. Stern to calculate the amount owing

under the Joint Trade Board's award, and improperly refused to grant Mr. Jackson an adjournment of the Joint Trade Board proceedings. The record indicates, however, that Mr. Jackson had notice of the Joint Trade Board's April 28 meeting, that he had been given a copy of Mr. Stern's "Incomplete Audit Report," that he attended the April 28 meeting which Mr. Stern also attended, that he voluntarily left the April 28 hearing before it was completed, and that the employer did not submit any evidence to counter Mr. Stern's report.

The employer has thus failed to demonstrate that the actions of the Joint Trade Board were "in bad faith or so gross as to amount to affirmative misconduct." *United Paperworkers International Union v. Misco, Inc.*, — U.S. —, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (discussing 9 U.S.C. § 10(c)). Nor has the employer supplied "clear evidence of impropriety" justifying vacatur of the award, *National Bulk Carriers, Inc. v. Princess Management Co.*, 597 F.2d 819, 825 (2d Cir.1979). *See also Dan River, Inc. v. Cal–Togs, Inc.*, 451 F.Supp. 497, 504 (S.D.N.Y.1978) (refusal to grant adjournment within arbitrator's discretion when party had notice and opportunity to appear).

*Attorney's Fees*

The union seeks an award to compensate it for attorney's fees incurred in pursuing the instant court action. While § 301 of the LMRA does not provide for attorney's fees in actions to enforce labor arbitration awards, an award of attorney's fees in such actions is appropriate " 'when a challenger refuses to abide by an arbitrator's decision without justification.' " *International Chemical Workers Union v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir.1985) (quoting *Bell Production Engineers Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir.1982)). The position of the employer here, with the exception of its challenge to the arbitrator's award of legal fees, was "without justification" and an award of attorney's fee is appropriate. Moreover, Article XVII of Agreement II specifically requires that the employer pay the attorney's fees incurred by the union in enforcing an arbitral award requiring the employer to pay delinquent contributions to the union trust funds. The union's request for reasonable attorney's fees is therefore granted. The union is directed to file affidavits setting forth the amount of attorney's fees incurred in this action. The employer will have an opportunity to respond to such submission.

*Conclusion*

For the foregoing reasons, the union's motion to confirm the award of the Joint Trade Board dated June 18, 1987 is granted, and the employer's cross-motion to vacate the award is denied, except to the extent the award grants the union $3,500.00 in legal fees. The union's request for attorney's fees incurred in this action is granted.

SO ORDERED.