Joseph B. MOSCA, Jr., Josephine Mosca, Joseph B. Mosca, Sr., and Sis N Son, Plaintiffs,

v.

DOCTORS ASSOCIATES, INC. d/b/a Subway, Louise Scotti, Ralph Pisselli, and Leonard Axelrod, Defendants.

No. 92 CV 5818 (SJ).

United States District Court, E.D. New York.

Oct. 29, 1993.

Marvin E. Kramer, Kramer & Fisherman, Garden City, NY, for plaintiffs.

Eugene H. Shifrin, Olshan Grundman Frome & Rosenzweig, New York City, Lisa G. Bakanas, Wiggin & Dana, New Haven, CT, for defendants.

### MEMORANDUM AND ORDER

JOHNSON, District Judge:

### INTRODUCTION

Plaintiffs Joseph B. Mosca, Jr., Josephine Mosca, Joseph B. Mosca, Sr., and Sis N Son (collectively the "Moscas") commenced this action against Defendants Doctors Associates, Inc. ("DAI"), d/b/a Subway, Louise Scotti ("Scotti"), Ralph Pisselli ("Pisselli"), and Leonard Axelrod ("Axelrod") alleging violations of the New York General Business Law, the Connecticut Franchise Act, and the common and statutory law of the State of Connecticut, including common law fraud, unjust enrichment, and fraudulent business practices by Defendant. Defendants now move to dismiss the action in favor of arbitration or, in the alternative, stay the action pending arbitration pursuant to an arbitration clause in agreements signed by DAI and Plaintiffs. For the reasons stated below, Defendants motion to dismiss is granted.

### FACTUAL BACKGROUND

In October 1987, Joseph Mosca, Jr. and Josephine Mosca entered into two contracts to purchase Subway sandwich shop franchises. Defendant Scotti was the Developing Agent for their area who would approve a location, supervise the franchise, and be paid a portion of the initial franchise fee and royalties. After several locations were rejected by Scotti, Plaintiffs were informed by Pisselli, a sales representative of DAI, of a suitable location in New Brunswick and on February 6, 1989, Plaintiffs Joseph B. Mosca, Jr. and Josephine Mosca entered into a contract to purchase and operate a Subway franchise in New Brunswick, New Jersey.

Plaintiffs were soon successful and were interested in opening a second franchise. David Scotti, the new Developing Agent, informed Plaintiffs that an abandoned location in Elizabeth was available which the Plaintiffs decided to purchase. A second Subway franchise agreement was entered into on August 4, 1989 by the Moscas. The Elizabeth store failed to be profitable causing the Moscas to fall behind in their royalty payments on both locations.

DAI expressed concern about the missed payments and Defendant Axelrod suggested that the Moscas sell the Elizabeth location. On August 7, 1990 the sale of the Elizabeth store was completed and the franchise agreement was terminated with the proceeds put toward the debt of both locations. Soon thereafter, Plaintiffs were evicted from the New Brunswick location.

Plaintiffs filed this suit contending that Defendants conspired to carry out an improper eviction and that Plaintiffs were fraudulently induced by Defendants to pay monies in settlement of the arrears in royalty payments. Count I alleges illegal eviction. Count II alleges that Scotti and Axelrod fraudulently induced Plaintiff, Joseph Mosca, Jr., to pay off the debts owed to DAI. Count III alleges violations of 18 U.S.C. § 1962(b) and (c) and that Plaintiffs engaged in a pattern of racketeering activity involving mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Count IV alleges that Defendants violated the Connecticut Franchise Act by improperly notifying Plaintiffs of the franchise termination.

*DISCUSSION*

Defendants, relying on the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, contend that an arbitration clause in the contracts with Plaintiffs requires dismissal of the action or an order staying the action pending arbitration. Plaintiffs respond that Defendants Scotti, Pisselli, and Axelrod are not bound by the agreement and that the allegations under the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1961–1968 and the Connecticut Franchise Act cannot be settled by an arbitrator.

■ The FAA establishes a "federal policy favoring arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), which requires that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir.1988); *Heat & Frost Insulators v. Insulation Quality Ent.*, 675 F.Supp. 1398, 1405 (E.D.N.Y.1988). Yet the provisions of the FAA do not apply to any and all contracts; a court must determine whether the FAA applies to the dispute, whether an agreement to arbitrate exists, and whether a specific claim was contemplated by the parties to be within the scope of the agreement. *Wilson v. Subway Sandwiches Shops, Inc.*, 823 F.Supp. 194, 198 (S.D.N.Y.1993); *Scher v. Bear Sterns & Co., Inc.*, 723 F.Supp. 211, 214 (S.D.N.Y.1989).

■ The FAA only governs those contracts which are defined in 9 U.S.C. §§ 1 and 2, *Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 209 (2d Cir.1973), such as "contract[s] evidencing a transaction involving commerce." 9 U.S.C. § 2. Here, the contract between Defendants and Plaintiffs created an ongoing commercial relationship involving parties from different states, a national advertising campaign and other marketing efforts, and training of Plaintiffs by Defendants; therefore the contract is governed by the FAA's provisions. *See* Franchise Agreements, appended to Notice of Motion as Exhibits 1 & 2.

To determine the existence of an arbitration agreement, the Court employs ordinary contract principles and "as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). In the instant case, each of the contracts between Defendants and Plaintiffs contained an arbitration clause that stated:

> Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut and judgment upon an award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. The cost of such a proceeding will be borne equally by the parties.

This clause is a broad one that purports to refer any and all disputes arising out of the contract to arbitration. This broad language mandates that the claims be arbitrated if the "allegations underlying the claims 'touch matters' covered by the parties' ... agreements." *Genesco, Inc. v. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987). Plaintiffs contend, however, that their claims are beyond the scope of the FAA and that all defendants are not bound by the agreement.

### 1. *Arbitration of Claims Against Scotti, Pisselli, and Axelrod*

■ Courts have consistently held that the acts of employees of a party to an arbitration agreement are arbitrable "as long as the challenged acts fall within the scope of the customer agreement." *Scher*, 723 F.Supp. 211; *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 451 (S.D.N.Y.1985); *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir.1960). Thus, contrary to Plaintiff's contention, all of the named defendants are bound by the arbitration clause. Each Defendant employee is an agent of DAI and is bound by the arbitration agreement since the acts ascribed to them occurred during and as a result of their employment and agency. Indeed, Plaintiffs themselves stated that they "have brought claims against DOCTORS ASSOCIATES, INC. for the actions of their agents." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 3.

There is no contention that Plaintiffs were misled as to the relationship between the individual defendants and DAI; the agency relationship was clear. This court will not permit Plaintiffs to avoid arbitration simply by naming individual agents of the party to the arbitration clause and suing them in their individual capacity. To do so would be to subvert the federal policy favoring arbitration and the specific arbitration clause in the instant case. *See Scher*, 723 F.Supp. at 217.

### 2. *Claims Under RICO and the Connecticut Franchise Act*

■ Congress clearly expressed its preference for arbitration in the FAA and enforcement of an arbitration clause does not depend on the residence of the parties but instead on the nature of the contract. *Stodolink v. Yankee Barn Homes, Inc.*, 574 F.Supp. 557 (D.Conn.1983). Indeed, some state courts have concluded that the Act requires enforcement of an arbitration clause even in the face of contrary state law or policies. *see Allison v. Medicab Int'l*, 92 Wash.2d 199, 597 P.2d 380 (1970) (*en banc*). In *Stodolink*, the district court held that state law is not controlling where a contract concerning interstate commerce falls under the FAA. 574 F.Supp. at 558.

As to RICO claims, the Supreme Court has held that there was no intention of Congress to exclude RICO claims from the FAA's requirements and that there is no inherent conflict between the FAA and RICO. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238–39, 107 S.Ct. 2332, 2343–44, 96 L.Ed.2d 185 (1987). Given that the contract in the instant case concerns interstate commerce and the allegations stem from the Defendants' acts under the contract, the result is mandated by the language of the Act and Plaintiffs' claims are properly heard by an arbitrator.

### 3. *Waiver of the Right to Arbitration*

■ Defendant contends that although Plaintiffs' claims are arbitrable they have waived their right to arbitration because they chose to file suit in this Court before seeking arbitration. While arbitration clauses can contain language that will effect a waiver if a party acts inconsistently, such a waiver will not be read into a clause simply be filing a judicial action or responding to such an action. *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.*, 636 F.Supp. 750, 757 (D.Puerto Rico 1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 845 (2d Cir.1977). Unless the party asserting waiver can show that some type of prejudice has been caused by the action, courts will not consider the filing to be a waiver. *Sea–Land Service*, 636 F.Supp. at 757. Here, no discovery has taken place and no evidentiary hearings have been held; nothing has occurred to prejudice Defendants.

Given that all of the issues in this case are arbitrable, there remain no live controversies

before this court and no reason to retain jurisdiction of this matter and stay the action pending arbitration. *See Moses H. Cone*, 460 U.S. at 13, 103 S.Ct. at 935. Parties are not precluded by this decision from seeking judicial review or enforcement of the arbitral award in the appropriate court if necessary.[1]

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is hereby GRANTED.

So Ordered.

---

1. This court cannot compel arbitration in the District of Connecticut which is the forum selected in the arbitration clause. *Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F.Supp. 483, 488 (D.C.N.Y.1985); *Couleur Intern. Ltd. v. Saint–Tropez West, A Division of California Fashion Indus. Inc.*, 547 F.Supp. 176, 177–78 (S.D.N.Y. 1982).